UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KSR INTERNATIONAL CO.,

   Plaintiff,

v.

DELPHI AUTOMOTIVE SYSTEMS,
L.L.C.,

   Defendant.
_____/

CASE NO. 12-10149

HON. MARIANNE O. BATTANI

**OPINION AND ORDER
DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION TO DISMISS**

  This matter is before the Court on Defendant Delphi Automotive Systems, L.L.C.'s Motion to Dismiss Plaintiff's Claim for ED&T Damages Pursuant to Fed. R. Civ. P. 12(B)(6) (Doc. 5) and Plaintiff KSR International Co.'s Motion for Partial Summary Judgment (Doc. 8). The Court heard oral argument on June 7, 2012, and at the conclusion of the hearing took the motion under advisement. For the reasons that follow, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's motion.

**I. STATEMENT OF FACTS**

  On February 5, 2010, Defendant issued a two-page Purchase Order under which Plaintiff agreed to supply throttle position sensors ("TPS") to Defendant for a five-year period. (Doc. 5 Ex. A). The Purchase Order incorporated Defendant's General Terms and Conditions by express reference (the "General Terms"). (Id., at p. 2). The General Terms is an eleven-page document that details the various rights and duties the parties have under their agreement. (Doc. 5 Ex. B).

Plaintiff claims the parties amended the Purchase Order in June 2010 to accommodate a design change. In response to Defendant's June 3, 2010 Request for Quote ("RFQ") to effectuate this change, (Doc. 13 Ex. A), Plaintiff sent Defendant a Quote for the updated design on June 23, 2010, quoting $4.0222 per TPS, (Doc. 17 Ex. B).

Plaintiff's Quote itemized the various costs related to the design and manufacture of the TPS to show how Plaintiff arrived at the $4.0222 piece price. The Quote specifically shows that Plaintiff itemized engineering, design, and testing ("ED&T") costs at a rate of $0.08 per TPS. ED&T costs included the time spent by Plaintiff's engineers performing studies, calculations, manufacturing simulations, checking and releasing drawings into the system, review and release of design drawings provided by Defendant, component level product verification testing which includes machine time, test engineer time and the approved product verification test plan. Plaintiff explains that it incurred these expenses prior to any TPS parts being manufactured and states its total ED&T costs related to this project amounted to $507,208.00. Plaintiff calculated the $0.08 of ED&T expense per TPS in its Quote by amortizing the total ED&T costs over the life of the five-year Purchase Order.

Defendant accepted Plaintiff's June 2010 Quote and the parties began performance shortly thereafter. Beginning in late December 2010, and for the following eight months, however, Defendant attempted to re-negotiate the TPS price, threatening that it might have to cancel the Purchase Order and move production of the parts in-house because Plaintiff's price was no longer competitive. On July 19, 2011, Gloria Calderon, the Defendant's buyer, notified Matt Boswell of Plaintiff by telephone that

Defendant was terminating the Purchase Order because Plaintiff's price was not competitive.  (Doc. 13 Ex. D at ¶ 12).  On July 25, 2011, and again on July 26, 2011, Calderon sent Boswell an email stating that "Delphi will end our current TPS assembly business effective March 31, 2012." (Doc. 13 Ex. E, Ex. F).

In response to Defendant's termination, Plaintiff sent Defendant a letter confirming that Defendant has canceled the Purchase Order and requested that it pay $368,739.00 for the remainder of the unpaid ED&T costs. (Doc. 13 Ex. G).  Defendant refused.

On January 12, 2012, Plaintiff filed a declaratory judgment action seeking, among other things, an order holding Defendant responsible for paying the ED&T costs. (Doc. 1).  Defendant filed a motion to dismiss Plaintiff's claims for ED&T costs under Rule 12(b)(6).  (Doc. 5).  Plaintiff filed a motion for partial summary judgment on the declaratory judgment claim under Rule 56.  (Doc. 8).

## II.    STANDARDS OF REVIEW

### A.    Rule 12(b)(6)

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the ground upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  A complaint need not contain detailed factual allegations, but it must include more than labels and conclusions. Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  A court must determine whether the complaint contains "enough facts to state a claim to relief that is

plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. The Court must accept the well-pleaded factual allegations as true. Hensley Mfg. V. ProPride, Inc., 579 F.3d 603 (6th Cir. 2009) (citing Twombly, 550 U.S. at 555). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-that the pleader is entitled to relief." Iqbal, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

**B.    Rule 56**

Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Id., 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine

issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The Court "must lend credence" to the non-moving party's interpretation of the disputed facts. Marvin v. City of Taylor, 509 F.3d 234, 238 (6th Cir. 2007) (citing Scott v. Harris, 127 S.Ct. 1769, 1775 (2007)). The non-moving party may not rest upon its mere allegations, but rather must set out specific facts showing a genuine dispute for trial. Fed.R.Civ.P. 56(c)(1). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. Hopson v. DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

### III. ANALYSIS

After reviewing the parties' motions and hearing oral argument, the Court finds that the final dispositive issue in this matter is whether Defendant agreed to pay for the entire amount of Plaintiff's ED&T costs. To resolve this dispute, the Court must interpret the parties' contract, which consists of the Purchase Order, and the General Terms that are incorporated into the parties' agreement by express reference on page two of the Purchase Order.

"When construing a contract, the goal is to ascertain and enforce the parties' intent on the basis of the plain language of the contract." New Freedom Mortg. Corp. v. Globe Mortg. Corp., 761 N.W.2d 832, 840 (Mich. Ct. App. 2008) (citation omitted). "Clear, unambiguous, and definite contract language must be enforced as written and courts may not write a different contract for the parties or consider extrinsic evidence to

determine the parties' intent." Wausau Underwriters Ins. Co. v. Ajax Paving Indus., Inc., 671 N.W.2d 539, 542 (Mich. Ct. App. 2003) (citations omitted).

In this case, the operative contract documents do not show that Defendant agreed to pay for the entire amount of Plaintiff's ED&T costs. The Purchase Order, expressly titled a "Requirements Contract," unambiguously shows that Defendant agreed only to purchase from Plaintiff TPS parts for $4.0222 per piece for five years. The two-page Purchase Order, and the eleven-pages of General Terms, do not refer to or even mention ED&T costs, much less include a promise from Defendant to pay for the entire amount of Plaintiff's ED&T expense. Even assuming that, as Plaintiff argues, Defendant's June 3, 2010 RFQ and Plaintiff's June 23, 2010 Quote are part of the contract under Paragraph 1 of the General Terms, neither document shows that Defendant promised to pay for all of Plaintiff's ED&T costs. There is no reasonable inference or suggestion that Defendant contracted to pay for these expenses in the RFQ and the Quote merely indicates that Plaintiff itemized $0.08 in ED&T costs per TPS. (Doc. 13 Ex. B). These documents do not present Plaintiff's ED&T costs as a separate charge and they certainly do not contain Defendant's promise to pay for all the ED&T costs over the duration of the Purchase Order. In sum, a plain reading of the contract reveals that Defendant never agreed to pay for the entire amount of Plaintiff's ED&T costs related to the TPS project. To conclude that the contract requires Defendant to separately pay for Plaintiff's ED&T costs would impermissibly read words into the parties' agreement that simply are not there.

Plaintiff's strained interpretations of certain contract terms do not alter this conclusion. Paragraph 11 of the General Terms provides that if Defendant cancels a

6

contract for its own convenience, a seller's "sole and exclusive" is "the contract price for all goods or services that have been completed in accordance with this Contract as of termination date and delivered and accepted by Buyer and not previously paid for . . . ." (Doc. 5 Ex. B at ¶11). Seizing on the term "services," Plaintiff argues it can collect the full amount of ED&T "services" because Defendant contracted for and received ED&T "services," but has yet to pay for these "services" in-full. The Court rejects this interpretation because Defendant need only pay for "services that have been completed in accordance with this Contract . . . ." (Id.). For the reasons previously discussed, Defendant did not contract with Plaintiff to perform ED&T "services" – it agreed only to purchase TPS parts at $4.0222 per piece for five years. Accordingly, Plaintiff's ED&T costs were not "services" completed in accordance with the parties' contract.

Plaintiff's interpretation of Paragraph 12.5 in the General Terms fares no better. Paragraph 12.5 states: "[e]ngineering, consulting or development services ("Development Services") funded under this Contract that result in any idea, invention, concept, discovery, work of authorship, patent, copyright, trademark; trade secret, know-how or other intellectual property ("IP") shall be the sole property of [Defendant]." (Doc. 5 Ex. B at ¶12.5). Again seizing on the term "services," Plaintiff argues Defendant's refusal to pay Plaintiff for the balance of the ED&T costs would enable it to "own" these development "services" without having to pay for them. The Court disagrees for two reasons. First, as discussed above, Defendant never contracted for ED&T services. Second, there is no evidence, nor does Plaintiff even plead in the complaint that its ED&T services resulted in any of the enumerated categories set forth in Paragraph 12.5. Consequently, the ownership of the ED&T services did not pass to

7

Defendant and Plaintiff's interpretation of Paragraph 12.5 does not support its attempt to establish Defendant's liability.

Additionally, the Court finds that Plaintiff's alternative claims of promissory estoppel, unjust enrichment, and quantum meruit do not survive Defendant's motion. Plaintiff repeatedly insists Defendant received "services" for which it has not been paid. The record shows otherwise: Defendant paid for and received goods from Plaintiff; it did not order or receive "services" from Plaintiff. The Court rejects Plaintiff's suggestion that Defendant inequitably received the benefit of ED&T "services" when it issued the Purchase Order because Defendant knew Plaintiff could not produce the TPS without incurring substantial ED&T costs. It is a non-sequitur to argue that because Defendant purchased TPS parts from Plaintiff, it should also be held responsible for the entire amount of development costs related to the creation of those parts. The parties are sophisticated commercial entities. If Plaintiff wanted to ensure it could recover its unamortized ED&T costs in the event that Defendant prematurely cancelled the Purchase Order, it should have included such a term in the parties' comprehensive express agreement. It failed to do so. Accordingly, Plaintiff's claims for ED&T costs are dismissed.

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's motion for partial summary judgment (Doc. 8) and **GRANTS** Defendant's motion to dismiss (Doc. 5).

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATED: July 24, 2012

## CERTIFICATE OF SERVICE

    I hereby certify that on the above date a copy of this Order was served upon all parties of record via the Court's ECF Filing System.

                                                     s/Bernadette M. Thebolt
                                                     Case Manager